United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN B. TURNER, | No. C 11-05176 CRB |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| MELODY SMITH, ET AL., | |
| Defendants. / | |

Defendants Ambroselli, Brown, Tierney, and Cate ("Defendants") move to dismiss Plaintiff Stephen B. Turner's Second Amended Complaint (SAC) on several grounds, including that the complaint as a whole is incomprehensible in violation of Rule 8(a), that many of the claims are barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994), that certain claims violate joinder rules, and that many alleged causes of action fail to state valid claims for relief. The Court finds this motion suitable for disposition without oral argument. See N.D. Cal. Local R. 7-1(b).

## I.     BACKGROUND

Turner, proceeding *pro se*, is currently on parole in the State of California. SAC (dkt. 64) ¶ 20. He filed the original complaint in this lawsuit on October 24, 2011. See Compl. (dkt. 1). Six days later, Plaintiff filed a 121-page (213 pages including exhibits) First Amended Complaint (FAC). See FAC (dkt. 9). On December 12, 2011, Defendant Tierney

filed a motion to dismiss or stay the case (MTD), alleging, *inter alia*, that the FAC violated Rule 8(a) of the Federal Rules of Civil Procedure. MTD (dkt. 20) at 6.

Recognizing at that time that Plaintiff's 132-paragraph FAC containing 78 pages of block quotes from tangentially relevant caselaw was problematic, the Court granted Plaintiff leave to amend in lieu of dismissing the complaint outright under Rule 8(a). At the June 22, 2012, hearing, the Court strongly encouraged Plaintiff to retain an attorney. Minutes (dkt. 56) at 1. That did not happen, however, and Plaintiff filed his SAC on September 24, 2012. The SAC is a 160-page document with 168 paragraphs alleging 47 causes of action against thirteen named defendants and five Doe defendants. In addition, there are 50 pages of exhibits, for a total of 210 pages.

## II.     LEGAL STANDARDS

### A.     12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining facial plausibility, whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

A complaint should not be dismissed without leave to amend unless it is clear that the claims could not be saved by amendment. Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

### B. Rule 8(a)

Where the allegations in a complaint are "argumentative, prolix, replete with redundancy and largely irrelevant," the complaint is properly dismissed for failure to comply with Rule 8(a). McHenry v. Renne, 84 F.3d 1172, 1177, 1178-79 (9th Cir. 1996); see also Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673-74 (9th Cir. 1981) (affirming dismissal of complaint that was "'verbose, confusing and almost entirely conclusory'"). "Something labeled a complaint but . . . prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint," McHenry, 84 F.3d at 1180, and "impose[s] unfair burdens on litigants and judges." Id. at 1179.

But "verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)." Hearns v. San Bernardino Police Dept., 530 F.3d 1124, 1131 (9th Cir. 2008). A complaint, even if lengthy, is permissible if it is "coherent, well-organized, and state[s] legally viable claims." Id.

A complaint that fails to comply with Rule 8(a) may be dismissed with prejudice pursuant to Rule 41(b).[1] Nevijel, 651 F.2d at 673. Generally, dismissal with leave to amend is proper "unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." Schneider v. California DOC, 151 F.3d 1194, 1196 (9th Cir. 1998).

### III. DISCUSSION

### A. Rule 8(a)

Defendants claim that the "prolix, confusing, and disjointed SAC unfairly and unreasonably burdens the court and Defendants, [and] makes it impossible for Defendants to formulate a response . . . ." MTD (dkt. 72) at 3. Defendants further allege that the SAC is "a tangle of made-up theories that have no obvious basis in law, " and that its structure and format amounts to "an incoherent jumble that makes it impossible to determine what legal

---

[1] Rule 41(b) states in pertinent part: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits." Fed. R. Civ. P. 41(b).

3

theories are being asserted, which facts are intended to support which claims, and appears to assert some claims against certain Defendants that are contradicted by the factual allegations." Id. at 10.

The Court disagrees. It is beyond dispute that the complaint is needlessly long-winded and contains much extraneous material, inappropriate argument, and redundancies. Nevertheless, Turner is proceeding *pro se*, and his complaint is intelligible, logically structured, and organized into distinct causes of action setting out forty-seven independent claims. To the extent the asserted claims are "made up theories" or contain factual allegations contradicting the asserted theory, Defendants' proper course is to proceed claim-by-claim under Rule 12(b)(6) and identify which asserted causes of action, in light of the alleged facts or applicable law, fail to state a claim.

### B.     Heck Bar

In order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).[2] A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Id. at 487.

"Heck applies to proceedings [that] call into question the fact or duration of parole." Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir.), cert. denied, 516 U.S. 851 (1995). A challenge to the denial of parole, whether based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits, directly implicates the validity of the prisoner's continued confinement. See Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997). Similarly, a challenge to the denial of parole based upon allegations of

---

[2] Heck applies equally to claims brought under §§ 1983, 1985 and 1986. McQuillion v. Schwarzenegger, 369 F.3d 1091, 1098 n.4 (9th Cir. 2004).

4

deceit and bias in the administration of the state's parole statutes implies the invalidity of the inmates' confinement "insofar as their prolonged incarcerations are due to the purported bias of state officials." McQuillion, 369 F.3d at 1097-98.

This Court agrees with other district courts holding that conditions of parole are themselves part of a defendant's sentence for purposes of Heck analysis. Cordell v. Tilton, 515 F. Supp. 2d 1114, 1121-22 (S.D. Cal. 2007); Moreno v. State of Cal., 25 F. Supp. 2d 1060, 1062-63 (N.D. Cal. 1998); cf. Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

Accordingly, Heck does not permit a challenge to the procedures or validity of a parole revocation decision unless the parole board's decision has been reversed, expunged, set aside or called into question. See McQuillion, 369 F.3d at 1097-98; Schafer v. Moore, 46 F.3d 43, 44-45 (8th Cir. 1995); Littles v. Bd. of Pardons and Paroles Div., 68 F.3d 122, 123 (5th Cir. 1995); McGrew v. Texas Bd. of Pardons & Paroles, 47 F.3d 158, 161 (5th Cir. 1995). Nor may a plaintiff question the validity of his parole conditions unless and until he shows that the conditions have been invalidated. Moreno, 25 F. Supp. 2d at 1064.

The majority of Turner's forty-seven causes of action are barred by Heck and its progeny. The core of Turner's case is a challenge to the state parole board's classification of him as a high-risk sex offender, the imposition of parole conditions consistent with that classification, and the revocation of his parole on various occasions for violations of those conditions. Though some of the individual causes of action present as challenges to particular conduct by parole agents or the parole board, those challenges ultimately rest on the proposition, or would require a finding, that a particular condition is invalid or that a revocation decision was invalid.

For example, Turner's sixth cause of action alleges "the intentional violation of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution for false arrest/imprisonment and malicious prosecution." SAC at 106. That claim arises out of Turner's arrest and subsequent parole revocation in April 2012 for leaving Alameda County without approval. Id. & Ex. L. Turner argues that the sole purpose of his trip out of

Alameda County was to visit the San Francisco courthouse to file papers in a pending lawsuit, which he says he had a constitutional right to do. Though Turner's argument has some logical force, awarding him money damages on that cause of action would require a finding that the decision of the parole board to revoke his parole on those grounds was invalid, which this Court cannot do in the absence of a prior successful collateral attack on the revocation itself.

Likewise, Turner's myriad other causes of action for money damages explicitly or implicitly challenging the imposition of parole conditions or the revocation of his parole cannot be maintained in a § 1983 suit until he has first successfully challenged the parole conditions or parole revocation. Turner concedes that his attempts at obtaining habeas relief have thus far been unsuccessful. SAC ¶¶ 51, 56, 98. Accordingly, the Court DISMISSES–without leave to amend but also without prejudice such that Turner may refile in the event he succeeds in a collateral attack–the following claims as barred under Heck: 1-6, 8-15, 17, 19-20, 22, 32-40, and 47.

### C.  Joinder

"A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Accordingly, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits." Id.

Parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); see also George, 507 F.3d at 607 (noting that, in prisoner complaint seeking to join 24 defendants and approximately 50 distinct claims, prisoner made no effort to show that 24 defendants he

named had participated in the same transaction or series of transactions or that a question of fact was common to all defendants).

Here, four of Turner's claims–numbers 7, 16, 28, and 30–cannot be properly joined because they arise out of separate transactions or occurrences and are against defendants not related to the imposition of Turner's parole conditions. Claims 16 and 28 concern an alleged delay from release from prison by Defendants Hartley and Cate; claim 7 involves an alleged attack on Turner inside of prison by Defendant Tierney (a guard); and claim 30 concerns a promise allegedly made by parole agent Cruz while driving Turner to jail that Turner would be released promptly.

Turner never claims that Hartley, Cate, Tierney, and Cruz[3] had any involvement in the imposition of his parole conditions, nor do the claims against them arise from those conditions. And whether each Defendant violated § 1983 in unrelated transactions would not be a common question of law justifying Rule 20 joinder. E.g., Coughlin v. Rogers, 130 F.3d 1348, 1350-51 (9th Cir. 1997). Accordingly, claims 7, 16, 28, and 30 are DISMISSED as improperly joined.

**D.    Remaining Claims**

Turner's remaining causes of action–18, 21, 23-27, 29, 31, and 41-46 fail due to inadequate pleading or the failure to state a claim:

<u>No Cognizable Cause of Action</u>

-Claim 27: Failure to train (not pled as independent cause of action, but theory of supervisory liability as to Defendants Sims, Bent, Ambroselli, and Cate for other claims untenable for reasons discussed in this Order)

-Claim 29: 18 U.S.C. § 242 (no private right of action under criminal statutes, e.g., Rockefeller v. U.S. Court of Appeals Office for the Tenth Circuit Judges, 248 F. Supp. 2d 17, 23 (D.D.C. 2003))

<u>Conclusory Pleading</u>

---

[3] In addition to Cruz, Turner alleges that Defendants Smith, Sims, and Bent should be liable for the alleged broken promise to release Turner. SAC at 136. Nowhere in the cause of action or related facts does Turner explain how anyone other than Cruz had any connection to the incident, nor does Turner plead any facts which could, even if generously construed, support a theory of supervisory liability for the incident.

7

-Claim 18: Intentional infliction of emotional distress (no indication which, if any, facts support the claim)

-Claim 21: False light (no indication which, if any, facts support the claim)

-Claim 41: RICO (no indication which, if any, facts support the claim)

<u>Failure to State a Claim</u>

Claim 23 alleges a due process violation stemming from the alleged disclosure of Turner's confidential medical psychiatric information to the Deputy Commissioner adjudicating Turner's parole revocation hearing in May 2010. SAC at 128. Because Turner does not suggest that the medical information was irrelevant to the merits of the hearing, Turner's claim is foreclosed by Ninth Circuit precedent. See <u>Seaton v. Mayberg</u>, 610 F.3d 530, 534-35 (9th Cir. 2010) (no constitutionally protected expectation of privacy in prison medical records where state has legitimate penological interest in access to them); <u>see also</u> <u>Webb v. Goldstein</u>, 117 F. Supp. 2d 289, 298-99 (E.D.N.Y. 2000) (similar reasoning in context of dissemination of parolee medical information for legitimate purpose).

Claim 24 alleges due process violations and tort liability in connection with Defendant Smith's alleged perjury during parole revocation hearings in May 2010 and May 2012. SAC at 129-30. In the context of Turner's complaint as a whole, these allegations fail to state a claim. Turner says Smith committed perjury twice at the May 2010 hearing, SAC at 47, and three times at the May 2012 hearing, <u>id.</u> at 73, but he never identifies what she supposedly said that was untrue.

Indeed, his complaint suggests that Turner may be referring to statements she made that were true but that he felt had unfair implications, including that Turner's commitment crime "involved minors" and so his parole conditions were related to his commitment crime, SAC at 74, and that agent Smith made a "mistake" in altering Turner's parole conditions rather than taking him into custody, <u>id.</u> at 48–neither of which appear to be false or amount to perjury.

Claim 25 alleges a due process violation predicated on Defendant Smith's allegedly fraudulent parole violation report in February 2011. SAC at 131. Specifically, Turner alleges that Smith listed the date of Turner's "arrest, parole hold, and discovery" as February

8

11–the day he was booked into jail–when in fact, Turner says, he was actually arrested on February 7 and transported to a psychiatric hospital for several days before being taken to jail. SAC at 53-54.

Turner speculates that Smith intentionally altered the dates to comply with a (supposed) rule that prisoners must receive copies of parole reports within three business days of the placement of a parole hold. Not only is the speculation implausible in light of the competing inferences of innocent mistake or good-faith belief that the parole hold clock did not start until Turner arrived at jail, but Turner does not suggest the alleged falsification affected his ability to prepare for, or the merits of, the hearing itself–so even if true, his allegations do not rise to the level of a due process violation.

Turner's Claim 26 is squarely foreclosed by Supreme Court precedent. Turner alleges that Defendant Smith defamed him by telling a third party that Turner was "dangerous to children," and that the defamation violated his Fourteenth Amendment due process rights. SAC at 132. But the Supreme Court has held that defamation by a state actor cannot alone support a claim for deprivation of the constitutional right to due process. See Paul v. Davis, 424 U.S. 693, 711-12 (1976).

In Claim 31, Turner alleges that requiring him to wear a GPS tracker was "cruel and unusual punishment" in violation of the Eighth Amendment. SAC at 137-38. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment, as are parole conditions. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Bagley v. Harvey, 718 F.2d 921, 925 (9th Cir. 1983).

Turner says that "the GPS device . . . has not been proven safe," id., and that the device caused abrasions and pain when he walked. Id. at 81-82. Turner compares the risks associated with it to the risks from using a cell phone. Id. Turner's speculation about "possible" risks that might be inferred from inconclusive studies do not set forth a claim of cruel and unusual punishment. And commonly used restraint devices like handcuffs cause discomfort, cuts, and abrasions similar to those described by Turner, but their use on people

1  in custody does not, absent far more extreme allegations, state a claim for violation of the
2  Eight Amendment.  See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996).

3  Claims 42-46 all stem from an alleged one-day delay in releasing Turner from the
4  Santa Rita county jail in September 2012. SAC 148-151.  Turner–without explanation and
5  citing laws and regulations stating only that a prisoner has to be released on the date he is set
6  to be released–says he should have been released on September 9, 2012, yet was actually
7  released on September 10, 2012. Id. ¶ 145.  However, Turner elsewhere alleges that the
8  Deputy Commissioner presiding over Turner's parole hearing stated at the hearing that
9  Turner was to be released on September 10. Id.  Accordingly, Turner's complaint effectively
10 alleges that he was released on time, and claims 42-46 fail.

### E. Younger Abstention

12 Defendants ask this Court to stay proceedings pending the outcome of a similar suit
13 Turner filed in state court. Mot. at 14.  Younger abstention is required when: (1) state
14 proceedings, judicial in nature, are pending; (2) the state proceedings involve important state
15 interests; and (3) the state proceedings afford adequate opportunity to raise the constitutional
16 issue.  See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432
17 (1982); Dubinka v. Judges of the Superior Court of the State of Cal., 23 F.3d 218, 223 (9th
18 Cir. 1994).  All three elements must be present  Agriesti v. MGM Grand Hotels, Inc., 53 F.3d
19 1000, 1001 (9th Cir. 1995) (abstention improper where arrest and issuance of citation were
20 executive acts not judicial in nature, and only potential for future state judicial proceedings
21 existed).  A fourth requirement has also been articulated by the Ninth Circuit: that "the
22 federal court action would enjoin the state proceeding or have the practical effect of doing so,
23 i.e., would interfere with the state proceeding in a way that Younger disapproves."
24 SJSVCCPAC v. City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008) (citing cases).

25 Younger applies to noncriminal proceedings when important state interests are
26 involved.  See Middlesex, 457 U.S. at 432.  The Ninth Circuit has made clear, however, that
27 the use of Younger abstention in civil proceedings is an "extraordinary and narrow
28 exception" to the general rule that federal courts must exercise jurisdiction over cases

properly before them. See Potrero Hills Landfill v. Cnty. of Solano, 657 F.3d 876, 882 (9th Cir. 2011). In determining whether an important state interest is involved, a federal court must "consider[] its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." Baffert v. Cal. Horse Racing Bd., 32 F.3d 613, 618 (9th Cir. 2003).

This case does not fall into the extraordinary and narrow exception for civil cases because it does not implicate the kind of important state interest required for Younger abstention. Defendants argue California has an important state interest in enforcing its sex-offender laws, which is true, but this lawsuit implicates only an individual application of those laws, and not the ability of the state to enforce and administer its scheme generally. See Potrero Hills, 657 F.3d at 886 ("[A]n abstention proponent must assert more than a state's generic interest in the resolution of an individual case. . . .").

## IV.   CONCLUSION

The court GRANTS the Motion to Dismiss with leave to amend in a manner consistent with this Order. Plaintiff may amend **only** the claims described above in Section III.D, and may **not** replead any causes of action that would require this Court to find that his parole conditions are invalid or that a parole revocation decision was invalid, see *supra* Section III.B, and may **not** add entirely new causes of action. If Plaintiff wishes to submit an amended pleading, he must do so by **5:00 p.m. on January 4, 2013**. Failure to submit an amended pleading by the deadline may result in dismissal of Plaintiff's case with prejudice.

**IT IS SO ORDERED.**

Dated: December 3, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE