1

2              IN THE UNITED STATES DISTRICT COURT

3          FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5   STEPHEN B. TURNER,                    No. 11-cv-5176 CRB

6            Plaintiff,                   **ORDER GRANTING DEFENDANTS'**
                                          **MOTION FOR SUMMARY**
7     v.                                  **JUDGMENT AND DENYING**
                                          **PLAINTIFF'S MOTION FOR**
8   MELODY SMITH, et al.,                 **PARTIAL SUMMARY JUDGMENT**

9            Defendants.
    _____/

10

11          This case has gone on for quite some time.  And now it ends.

12  **I.      BACKGROUND**

13          Since filing this suit pro se in 2011, Plaintiff Stephen Turner has submitted 342 pages

14  of complaints alleging that his parole officers mistreated him in an impressive variety of

15  ways.  See Compl. (dkt. 1) (4 pages); FAC (dkt. 9) (89 pages); SAC (dkt. 64) pt. 1 (86

16  pages); SAC (dkt. 64–1) pt. 2 (74 pages); TAC (dkt. 79) (63 pages); 4AC (dkt. 134) (26

17  pages); 5AC (dkt. 168) (9 pages).  His sprawling allegations have included that his parole

18  officers conducted unlawful searches and seizures, violated the "knock-and-announce" rule,

19  and retaliated against him by conducting parole compliance checks, arresting him for parole

20  violations, and revoking his parole.  See, e.g., 4AC ¶¶ 75(a)–(g).  He has also alleged that

21  parole conditions barring him from associating with his fiancée or traveling out of the county

22  without prior permission were unconstitutional.  See, e.g., id. ¶¶ 35(a)–(d); 65(b)(iii)–(v).

23          After Turner filed his Fourth Amended Complaint, the Court granted in part and

24  denied in part the officers' motion for judgment on the pleadings.  From the bench, it granted

25  the motion as to—among other things—Turner's claims for violations of his right "to petition

26  and access the courts" and his right against "unlawful search and seizure."  See Hr'g

27  Transcript (dkt. 15) at 4:17–21.  The Court denied the motion as to—among other

28  things—"absolute immunity," "retaliation," "right to freedom of association," "right to

    marry," and substantive due process.  Id. at 4:21–5:5.

United States District Court
For the Northern District of California

1    The Court then appointed counsel to represent Turner.  See Order (dkt. 153).  When

2    that didn't work out, the Court appointed new counsel.  See Mot. to Withdraw (dkt. 160);

3    Order Granting Mot. to Withdraw (dkt. 165); Not. of New Counsel (dkt. 167).  With

4    counsel's assistance, Turner filed his (mercifully) nine-page Fifth Amended Complaint.  He

5    alleges that the officers prohibited him from associating with his fiancée as a special

6    condition of parole, see 5AC ¶ 16, conducted a retaliatory compliance check in April 2011,

7    see 5AC ¶ 17; Turner Depo. (dkt. 181) 145:1–146:21, threatened that "bad things" would

8    happen if he did not drop pending lawsuits or refrain from filing new ones in December

9    2011, see 5AC ¶¶ 18–20, and arrested him on April 13, 2012 for traveling to San Francisco

10   for a court hearing without permission, see 5AC ¶ 21.  Although he makes no mention of it in

11   his complaint, Turner also alleges that he was arrested on December 12, 2011 in retaliation

12   for reporting the threat of "bad things" to come. Turner Decl. (dkt. 182) ¶¶ 21–22; Turner

13   Depo. 111:19–112:8.

14   Turner maintains that these acts violated his "constitutional rights under the First,

15   Fourth, Fifth and Fourteenth Amendments" to (1) "use the judicial system to petition the

16   government for redress," (2) "associate and communicate with close family members," and

17   (3) "be free from arbitrary and capricious law enforcement and undue police intrusions."

18   5AC ¶¶ 25(a)–(c).  He also brings state law claims.  See 5AC ¶¶ 29–44.  Because Turner is

19   no longer on parole, he seeks money damages.  See Prayer (5AC p.7) ¶¶ 1–6.  The officers

20   moved for summary judgment.[1]  See Def. MSJ (dkt. 184) at 1.  Turner moved for partial

21   summary judgment as to (2) and (3).  Pl. MPSJ (dkt. 180) at 2.

22   After reviewing the moving papers, the Court ordered further briefing on whether

23   "Defendants Sims, Smith, and/or Bent [are] entitled to summary judgment on the claim that

---

[1] Turner insists that the officers have moved only for partial summary judgment. See Pl. Opp'n (dkt. 190) at 10 ("Defendants make no arguments concerning the other aspects of Plaintiff's case); id. at 1 ("[T]heir motion makes no argument that they are entitled to judgment on . . . ."); Pl. Supp. Resp. (dkt. 200) at 1 ("Neither party sought summary judgment on the issue of access to Court.").  He is mistaken.  The officers captioned their motion for summary judgment as such and asked the Court "to grant summary judgment in their favor and against Plaintiff Stephen Turner"—full stop.  MSJ at 1.  They also argued that "any access to courts or unlawful arrest claims have already been dismissed by the Court and continue to fail for the reasons already determined[.]"  Id.  That is all they said, but they said it, and so they have properly moved for summary judgment as to all of Turner's claims.

2

United States District Court
For the Northern District of California

Turner's arrest in December 2011 violated his First Amendment rights because it was made in retaliation for refusing to drop pending lawsuits." See Order (dkt. 196).  The parties' submissions brought the following facts to light:

On December 7, 2011, Defendant Gregory Sims allegedly told Plaintiff Stephen Turner that "bad things" would happen if he did not drop his pending lawsuits and refrain from filing new ones.[2]  5AC ¶¶ 18–20; Turner Depo. 122:20–24; Turner Supp. Decl. (dkt. 201) ¶ 4.  "Around the same time, approximately December 7," Turner was at a sex-offender group therapy session.[3]  Turner Supp. Decl. ¶ 5.  Another parolee in the group reported to Defendant Melody Smith that, during the session, Turner yelled, "They can fuck with anyone else, but they ain't fucking with me!  I'm too old to be told what to do.  What's her name?  Melody Smith?  By the time I get done with her, she won't be singing any more melodies."[4]  Smith Supp. Decl. (dkt. 199–1) ¶ 7; Parole Revocation Dec. (dkt. 199–2) at 3.  Smith then contacted the group counselor, who confirmed the other parolee's account.[5]  Smith Supp. Decl. ¶ 7.  Knowing that Turner had a prior conviction for publicly carrying a loaded firearm, she informed the Sexual Assault Felony Enforcement ("SAFE") Task Force about the statements, who took Turner into custody on December 12.  Id. ¶¶ 7–8.  Turner resisted arrest and had to be carried to the patrol car.  Id. ¶ 8.  Because he expressed suicidal ideations, the SAFE agents took Turner to a psychiatric facility for treatment.  Id.; Turner Supp. Decl. ¶ 8.

---

[2]  The next day, Turner "went to the Federal Bureau of Investigation and to the U.S. Attorney's office in San Francisco" to report Sims.  Turner Supp. Decl. (dkt. 203–1) ¶ 4.

[3]  Although it is not clear that the session occurred after the encounter with Sims, the Court must assume that it was for the purposes of summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[4]  Turner maintains that he in fact "said something to the effect that 'when I'm done with these lawsuits, Smith isn't gonna be singing any more melodies."  Turner Supp. Decl. (dkt. 203–1) ¶ 5.  He also insists that these statements were "done jokingly and certainly not threateningly."  Id.

[5]  Turner is mistaken that these statements from his fellow parolee and group counselor are necessarily hearsay.  See Opp'n (dkt. 200); Objection (dkt. 204).  They could—and presumably would—be offered for their effect on the listener (that Smith had cause for concern) rather than for the truth of the matter asserted (that Turner did in fact say these words).  That is not hearsay.  See Fed. R. Evid. 801(c)(2); see also, e.g., United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991).  Defendants had every right to respond to Turner's argument to the contrary on reply, while the Court has every right to, well, get it right.

United States District Court
For the Northern District of California

1    After being medically cleared three days later, Turner was transferred to the Santa

2    Rita Jail for allegedly violating his parole by making criminal threats and resisting arrest.

3    Smith Supp. Decl. ¶ 9.  The Board of Parole found probable cause to detain Turner on both

4    charges.  Id. ¶ 10.  It ultimately upheld the latter but dismissed the former because "the threat

5    was not immediate."  Parole Revocation Dec. at 3.

6    **II.    LEGAL STANDARD**

7    The Court may grant a motion for summary judgment "if the movant shows that there

8    is no genuine dispute as to any material fact and the movant is entitled to judgment as a

9    matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment "is to

10   isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317,

11   323–24 (1986).  A dispute is genuine if the admissible evidence on the record "is such that a

12   reasonable jury could return a verdict" for either party. Anderson v. Liberty Lobby, Inc., 477

13   U.S. 242, 248 (1986).  A fact is material if it could affect the outcome of the suit under the

14   governing law. Id. at 248–49 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S.

15   253, 288 (1968)).  To determine whether a genuine dispute as to any material fact exists, the

16   Court must view the evidence in the light most favorable to the non-moving party. Id. at 255.

17   In determining whether to grant or deny summary judgment, it is not the Court's task

18   "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d

19   1275, 1279 (9th Cir. 1996) (internal citation omitted).  Rather, the Court may rely on the

20   nonmoving party to "identify with reasonable particularity the evidence that precludes

21   summary judgment." Id.  But although the Court need only consider materials cited by the

22   parties, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

23   **III.    DISCUSSION**

24   In their initial briefs, the parties focused almost entirely on whether Turner may

25   recover for the alleged violation of his substantive due process right to associate with his

26   fiancée. See Def. MSJ at 6–14; Pl. Opp'n (dkt. 190) at 3–10; Def. Reply (dkt. 194) 4–10; Pl.

27   MPSJ at 4–7; Def. Opp'n (dkt. 189) at 4-9; Pl. Reply (dkt. 195) at 2–5.  That was regrettably

28

4

a fruitless exercise.[6]  Absolute immunity is an absolute bar to damages claims against "parole officers for imposing allegedly unconstitutional parole conditions," like the one prohibiting Turner from associating with his fiancée.[7]  Thornton v. Brown, 757 F.3d 834, 839–40 (9th. Cir. 2013); Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004).

Absolute immunity does not, however, bar claims that parole officers "enforced" conditions of parole in "an unconstitutionally arbitrary or discriminatory manner."  Thornton, 757 F.3d at 840.  Turner alleges something of the sort, namely that he was retaliated against when (1) parole officers conducted a compliance check in April 2011, see 5AC ¶ 17; Turner Depo. 145:1–146:21, (2) Defendant Gregory Sims said in December 2011 that "bad things" would happen if he did not drop pending lawsuits or refrain from filing new ones, see 5AC ¶¶ 18–20; Turner Depo. 122:2–24, (3) Defendant Melody Smith had him arrested on December 12, 2011 for making criminal threats, Turner Decl. (dkt. 182) ¶¶ 21–22; Turner Depo. 111:19–112:8; Turner Supp. Decl. ¶ 9, and (4) arrested him again on April 13, 2012 for traveling to San Francisco without permission for a court hearing, see 5AC ¶ 21; Turner Depo. 105:5–110:24.

As to the first allegation, the only evidence that the April 2011 compliance check was retaliatory is Turner's testimony that Defendants "despise" him.  See Turner Depo. 146:2–19.  A "naked assertion" of nefarious intent will not survive a motion to dismiss, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007), let alone summary judgment.  Turner's First Amendment retaliation claim arising out of this incident therefore fails.  And because even

---

[6]  It appears that the parties took the Court's reference to "absolute immunity" when ruling on the officers' motion for judgment on the pleadings as removing that issue from the case entirely, rather than just for acts that, unlike imposing a parole condition, are not quasi-judicial.

[7]  Besides disposing of Turner's claim that Defendants violated his "right to associate and communicate with close family members, including [his] fiancée, and the right to marry his fiancée," 5AC ¶ 25(b), it also does away with his claim that they violated his "right to use the judicial system to petition the government for redress," to the extent that other parole conditions allegedly impinged on that right, 5AC ¶ 25(a).  And to the extent Turner maintains that his "difficulty reaching" Smith about attending court hearings also violated that right, Turner Supp. Decl. ¶ 2, he is wrong.  For one thing, Turner must have some evidence that he suffered an actual injury related to his lawsuits caused by that difficulty—for example that his case was dismissed.  See Lewis v. Casey, 518 U.S. 343, 351 (1996).  He has none.  For another, Turner could simply have requested leave to appear in court by telephone.  Instead, he chose to leave the jurisdiction without permission in violation of his parole.  That's on him.

United States District Court
For the Northern District of California

1   suspicionless searches of California parolees pose no Fourth Amendment problem,[8] that is

2   the end of the matter.  See Samson v. California, 547 U.S. 843, 846 (2006); see also Cal.

3   Penal Code § 3067(b)(3) (requiring all California inmates to agree to searches done "with or

4   without a search warrant" and "with or without cause" before being released on parole).

5        As to the second, third, and fourth allegations, the most Turner can do is bring First

6   Amendment claims for retaliatory arrest on the theory that the "bad things" threatened by

7   Sims were his arrests on December 12, 2011 and April 13, 2012.[9]  To prevail on such a

8   claim, Turner must show that a retaliatory motive was "a but-for cause" of his arrest.  Ford v.

9   City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013).  But because there is "almost always a

10   weak inference of retaliation whenever a plaintiff and a defendant have had previous

---

[8] Turner also alleges that Defendant Brett Everidge violated the knock-and-announce rule when conducting the April 2011 compliance check.  See 5AC ¶ 17; Turner Depo. 121:5–8.  But that is not a per se Fourth Amendment violation.  Wilson v. Arkansas, 514 U.S. 927, 934 (1995).  And even if it made a difference that Turner's parole conditions referenced searches done "without a warrant" but not searches done "without suspicion," Parole Conditions (dkt. 186–2) at 2, and even if the compliance check was indeed done without suspicion, the officers would still be entitled to qualified immunity.  In 2013, the Ninth Circuit expressly declined to decide "whether the Fourth Amendment permits suspicionless searches of probationers who have not accepted a suspicionless-search condition," United States v. King, 736 F.3d 805, 810 (9th Cir. 2013) (emphasis added), to say nothing of California parolees who, again, are required by law to agree to such a condition before being released, see Cal. Penal Code § 3067(b)(3).  It was thus far from clearly established law in 2011 that an omission like the one here transforms an otherwise reasonable search into an unreasonable one.

[9] Turner asserts that Sims's alleged threat is a stand-alone First Amendment claim that survives summary judgment.  See Pl. Supp. Resp. at 6 n.3.  Not so.  "In a constitutional tort, as in any other, a plaintiff must allege that the defendant's action caused him some injury."  Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).  So to survive summary judgment, a plaintiff must offer enough admissible evidence for a reasonable jury to find that he suffered an injury as a result of the defendant's retaliatory action.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (laying out summary judgment standard).  Turner has not done so.  In the First Amendment retaliation context, although a plaintiff need not show that his "speech was actually suppressed or inhibited" as a general matter, he must still show (1) that the defendant "intended to interfere" with his First Amendment rights and (2) that he suffered "some injury as a result" of the defendant's action.  Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 867 (9th Cir. 2016).  For example, a defendant might have deprived the plaintiff of a financial benefit, see id. at 863, or arrested him without probable cause, see Mendocino Envt'l Ctr. v. Mendocino Cty., 192 F.3d 1283, 1290 (9th Cir. 1999).  Turner, however, points to words and words alone.  He alleges that he "was really shook up and extremely nervous and upset" after the interaction, Turner Supp. Decl. ¶ 4, but "hurt feelings differ from legal injury," Freedom From Religion Foundation, Inc. v. Obama, 641 F.3d 803, 807 (7th Cir. 2011).  No reasonable jury, for that matter, could conclude that Sims's alleged threat caused Turner's larger psychological problems.  With nothing else to satisfy the actual-injury requirement, Turner must indeed show an actual chilling effect on his speech.  Cf. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (holding that, for an injury to be "concrete" under Article III, it must "actually exist").  Because he did not drop pending lawsuits, see Turner Decl. ¶ 21, or indicate that he refrained from filing any new lawsuits because of the alleged threat, see, e.g., Turner Supp. Decl. ¶ 4, he cannot, and so this claim cannot survive summary judgment standing alone.

**United States District Court**
For the Northern District of California

negative interactions," whether the arrest was objectively reasonable plays a critical role in

the analysis.[10]  See Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 901 (9th Cir. 2008).

Otherwise, "nearly every retaliatory First Amendment claim would survive summary

judgment," threatening government officials with "the disruption caused by unfounded

claims."  Id. (quoting Skoog v. Cnty. of Clackamas, 469 F.3d 1221, 1232 (9th Cir. 2006)).

For most retaliatory arrest cases, courts look to whether the officers had probable

cause because, for most arrests, that is the bar for objective reasonableness.  See id.  Ninth

Circuit law is unclear whether the presence of probable cause is dispositive or merely highly

probative in such cases.  Compare Beck v. City of Upland, 527 F.3d 853, 863–64 (9th Cir.

2008) (requiring plaintiff to prove the absence of probable cause), with Dietrich, 548 F.3d at

901 (observing that probable cause, though "not dispositive," is highly probative).  But, at a

minimum, it is clear that a retaliatory-arrest claim will not survive summary judgment if there

is "very strong evidence of probable cause and very weak evidence of retaliatory motive."

Dietrich, 548 F.3d at 901.

This is not most retaliatory arrest cases.  Turner was on parole for both arrests.  Parole

officers do not need probable cause to arrest a parolee.  See Sherman v. U.S. Parole Comm'n,

502 F.3d 869, 884 (9th Cir. 2007).  Instead, they need only a reasonable belief that a parole

violation has occurred.[11]  Id.; see also United States v. Butcher, 926 F.2d 811, 814 (9th Cir.

1994) (citation omitted) (reasoning that the "arrest of a parolee is more like a mere transfer of

the subject from constructive custody into actual or physical custody").  The parties do not

cite a case—and the Court knows of none—that clearly establishes whether probable cause

or this lower standard informs the analysis of a retaliatory-arrest claim brought by a parolee.

So just as it was unclear in Reichle v. Howards, 132 S. Ct. 2088 (2012), whether the

average person has a "right to be free from a retaliatory arrest that is otherwise supported by

probable cause," id. at 2094, here it was unclear whether a parolee has right to be free from a

---

[10]  This is all the more critical when it comes to parole, which is chock-full of potential for
negative interactions.  See, e.g. Turner v. Smith et al., no. 11-cv-5176-CRB (N.D. Cal) (this case).

[11]  Parole officers may also ask the police to make the arrest rather than do it themselves.  See
Butcher, 926 F.2d at 814.

retaliatory arrest otherwise supported by a reasonable belief that he had violated his parole or, for that matter, posed a potential threat to his parole officer.  As a result, the officers are entitled to qualified immunity unless it was unreasonable to believe that either concern applied here.[12]  See id.; see also Mullenix v. Luna, 136 S. Ct. 305, 309 (2015) (per curiam) (holding that critical question for qualified immunity is "whether the violative nature of particular conduct is clearly established").

Turner does not (and cannot) dispute that he violated his parole in April 2012, or that Smith knew about the violation.  See Turner Depo. 109:12–21 ("She arrested me because I went to the federal courthouse without her prior approval."); Am. Parole Conditions (dkt. 186–5) at 5 (requiring prior approval for travel outside Alameda County).  It was therefore reasonable to believe that he had violated his parole.[13]  Qualified immunity applies.

The same is true for his December 2011 arrest.  Because this piece of the puzzle is objective, it does not matter what Turner actually said or intended—or what Smith actually thought.  What matters is what the fellow parolee and group counselor communicated to Smith.[14]  See, e.g., Terry v. Ohio, 392 U.S. 1, 21–22 (1968) (noting that an objective test asks whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate").  And even though their version of what Turner said fell short of a true criminal threat, see Cal. Penal Code § 422, Smith could reasonably believe that Turner posed a potential threat to her safety based on their account.[15]  Qualified immunity applies here too.

---

[12]  "The plaintiff bears the burden of showing that the right at issue was clearly established." Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).  Turner has not met that burden here.

[13]  For this reason, there was no Fourth Amendment violation.  See Sherman, 502 F.3d at 884.

[14]  As already discussed, see supra note 5, Smith may testify to these statements so long as they are offered for their effect on the listener.  The Court considers them for that purpose only.  What is more, Turner was present for the session and could thus at the very least identify the group counselor. But because Turner did not seek her out—or because she would have confirmed corroborating the other parolee's story—she did not offer a declaration putting what she told Smith in dispute.  (Their conversation is of course outside Turner's personal knowledge, so his word won't do.)

[15]  So again: no Fourth Amendment violation.  See Sherman, 502 F.3d at 884.

United States District Court
For the Northern District of California

The foregoing is enough to dispose of Turner's retaliatory-arrest claims, but it is not their only fatal flaw. Here, as in <u>Dietrich v. John Ascuaga's Nugget</u>, 548 F.3d 892 (9th Cir. 2008), "no reasonable juror could find from the undisputed facts that Defendants acted in retaliation for Plaintiff's First Amendment activities." <u>Id.</u> at 901. Turner alleges that <u>Sims</u> threatened "bad things" to come but does not dispute that <u>Smith</u> instigated both arrests. That being so, "the causal connection required here is not merely between the retaliatory animus of one person and that person's own injurious action," as in most retaliatory-arrest cases, "but between the retaliatory animus of one person and the action of another," as in <u>Hartman v. Moore</u>, 547 U.S. 250, 262 (2006) (holding that, for this reason, the absence of probable cause must be pleaded and proved in retaliatory-prosecution cases). Turner points to no affirmative evidence suggesting that Smith instigated his arrest not out of reasonable concern for her safety, but to ensure that Sims's alleged threat of "bad things" had teeth. Likewise, he points to no affirmative evidence suggesting that Sims played a role in the arrests. As for Defendant John Bent, Turner baldly asserts that he "ratified" the arrests but, yet again, provides no evidence to back it up. <u>See</u> Turner Decl. (dkt. 182) ¶ 22; <u>see generally</u> Turner Supp. Decl (making no mention of Bent).

The most Turner can muster regarding his December 12, 2011 arrest is that it came five days after Smith learned about his alleged statements, which he argues is a "remarkable" delay. Pl. Supp Resp. (dkt. 200) at 2. There is nothing remarkable about it. Arrests do not always, or even often, happen immediately.[16] But whatever scintilla of evidence the five-day delay might provide, it is insufficient. For example, <u>Maidhof v. Celaya</u>, 641 F. App'x 734 (9th Cir. 2016), reversed a denial of summary judgment on a retaliatory-arrest claim against a police chief even though he had praised protesters "getting booked so they won't be able to participate in [a] rally." <u>Id.</u> at 736. If that is not enough, this is far from enough.[17]

---

[16] Here, to name one of countless possibilities, Turner's housing situation was in flux during those five days. <u>See</u> Turner Supp. Decl. ¶ 7.

[17] Although <u>Beck v. City of Upland</u>, 527 F.3d 853 (9th Cir. 2008), allowed a retaliatory-arrest claim to survive summary judgment where the plaintiff was accused of making criminal threats, that case is readily distinguishable. First, there the very same officers confronted by the plaintiff about

1   Turner's claim regarding the April 13, 2012 arrest is even weaker.  Sims allegedly

2   threatened him on December 7, 2011—four months earlier.  <u>That</u> is a remarkable delay.

## IV.   CONCLUSION

4   For the foregoing reasons, none of Turner's federal law claims can survive summary

5   judgment.  The Court therefore lacks supplemental jurisdiction over his state law claims.  <u>See</u>

6   28 U.S.C. § 1367.  Accordingly, the Court GRANTS the officers' motion for summary

7   judgment and DENIES Turner's motion for partial summary judgment.  Pursuant to Civil

8   Local Rule 7–1(b), it does so without oral argument.

9

**IT IS SO ORDERED.**

10   Dated: March 7, 2017

12   CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

28   unfair treatment filed affidavits supporting the warrant for his arrest. <u>Id.</u> at 859–60.  Second, the officers
admitted that they took plaintiff's statement ("You don't know who you're dealing with") as a threat
to their jobs, not their persons.  <u>Id.</u> at 858–859.  Third, the plaintiff was not on parole.  <u>See id.</u> at 857–58.